Filed 5/24/22

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT, | C092003 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2019-80003183CUWMGDS) |
| v. | |
| STATE ALLOCATION BOARD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Steven M. Gevercer, Judge. Affirmed.

Xavier Becerra, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Anthony R. Hakl, and Jerry T. Yen, Deputy Attorneys General, for Defendant and Appellant.

Orbach Huff Suarez & Henderson, Philip J. Henderson, Glenn N. Gould, and Zachary N. Scalzo for Plaintiff and Respondent.

After the state gave plaintiff San Bernardino City Unified School District (District) hardship funding to build a school, the state demanded that the District return funds the District did not use for the project (the project savings). However, Education

1

Code section 17070.63, subdivision (c)[1] allows a district to retain project savings for other proper purposes when the savings include funds received from the state. The District challenged the demand for return of the funding in an appeal to the State Allocation Board (Board). The Board upheld the state's demand, relying on a regulation requiring the return of hardship funding. The District then filed an administrative mandamus action in the trial court, challenging the Board's decision and the pertinent regulation. The trial court found the regulation conflicted with the statutory scheme and entered judgment in favor of the District.

The Board appeals to this court, contending the trial court erred by determining that section 17070.63, subdivision (c) allows a district to retain hardship funding, even though the regulation requires return of unused hardship funding to the state. We agree with the trial court that the regulation relied on by the Board improperly conflicts with the statutory scheme, and that the District is entitled to retain the hardship funding.

We will affirm the trial court judgment.

BACKGROUND

Chapter 12.5 of the Education Code is the Leroy F. Greene School Facilities Act of 1998 (Greene Act). (Stats. 1998, ch. 407, § 4; § 17070.10.) It encompasses sections 17070.10 through 17078.43 and provides a framework for state and local funding to build local school facilities. (See, e.g., §§ 17071.75 [eligibility for funding]; 17072.30 [requirement of local participation]; 17079.10 [state funding to relieve overcrowding].) A comprehensive description of the Greene Act is not necessary to this opinion, and we will focus on the provisions and applications relevant to the contentions on appeal.

---

[1] Undesignated statutory references are to the Education Code.

2

The General Provisions of the Greene Act are set forth in Article 1. Under that Article, the Board is granted authority to adopt regulations for administering the Greene Act, to determine local districts' eligibility for funds under the Greene Act, and to apportion those funds. (§§ 17070.30; 17070.35, subd. (a).) Article 1 also allows a local school district to retain excess state funding if the district spends less than is allocated for the project. Section 17070.63, subdivision (c) provides: "Any savings achieved by the district's efficient and prudent expenditure of these funds shall be retained by the district in the county fund for expenditure by the district for other high priority capital outlay purposes." We will refer to this provision as the general savings statute.

Article 5, "New Construction Funding Process," provides for state assistance in funding new construction of school facilities. Generally, the school district must provide 50 percent of the funding from local sources before the Board releases state funds to cover the other 50 percent of the funding. (§ 17072.30; see *Sanchez v. State of California* (2009) 179 Cal.App.4th 467, 479 (*Sanchez*) [applying the Greene Act with respect to a regulation not at issue here].)

Article 8 of the Greene Act provides for hardship funding assistance. "A school district may apply for hardship assistance in cases of extraordinary circumstances." (§ 17075.10, subd. (a).) If the school district qualifies for hardship funding, the Board "may adjust or defer the local financial participation . . . ." (§ 17075.15, subd. (a).) In other words, the Board may decrease the funding percentage from local sources and increase the funding percentage from the state. The Board must "adopt regulations" to implement Article 8 concerning hardship funding assistance. (§ 17075.15, subd. (b).)

Under its authority to promulgate regulations to implement the Greene Act, the Board promulgated section 1859.103 of title 2 of the California Code of Regulations, which we will refer to as regulation 1859.103. This rule relates to savings achieved by a district that has received hardship funding assistance. The rule provides, as pertinent here: "[T]he State's portion of any savings declared by the district or determined . . . by

3

audit must be used to reduce the [School Facility Program] financial hardship grant of that project or other financial hardship projects within the district for a period of three years from the date the savings were declared by the district or determined by . . . audit." (Cal. Code Regs., tit. 2, § 1859.103.) The effect of this regulation is that a district must return to the state any unused hardship funding in order to reduce (retroactively) the state's hardship funding of the project unless the district uses the savings on other hardship projects within three years. The question presented in this case is whether this regulation is inconsistent with the general savings statute, section 17070.63, subdivision (c), which allows districts to retain savings, with no time limitations on when the funds must be used.

The pertinent facts are largely undisputed and straightforward. The District built a high school using state and local funding. The state contributed $17,880,758 in new construction funding and $17,683,996 in hardship funding. The District contributed $196,762. In other words, the state deviated from the usual 50/50 split between state and local funding by reducing the local participation to less than one percent based on the District's hardship application.

The interest earned on the money for the project was $442,042.20. Therefore, total funding for the project, including the interest earned, was $36,203,558.20. But the District spent only a total of $33,222,704.99 on the project.

The parties dispute the total amount of savings for the project. The Board claims the savings amounted to $3,256,486.78 because of considerations we need not discuss, and the District claims the savings amounted to $2,980,853.21. As will be seen, this dispute is inconsequential because the District is entitled to retain the entire project savings, whatever the amount.

After completion of the project, the state Office of Public School Construction determined by audit that the District was required to return to the state $3,376,502.88, "to reduce the financial hardship apportionment of this project," under regulation 1859.103.

4

The District appealed the determination, but the Board ruled the District could not retain the project savings.

The District filed this administrative mandamus action to overturn the Board's decision. The trial court agreed with the District's position and entered judgment against the Board, allowing the District to retain the project savings.

DISCUSSION

The Board contends the Legislature did not intend to allow districts to keep unneeded and unused hardship funds and, therefore, regulation 1859.103, providing for return of unused hardship funds from a district to the state, is a valid regulation implementing the Legislature's intent.**2**

When we interpret statutory language, our goal is to determine what the Legislature intended. We first examine the language of the statute in its legislative context to determine the Legislature's intent. (*Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 268, superseded by statute in *Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 396.) We review de novo the determinations of the Board and the trial court on matters of statutory interpretation. (*Pulaski v. Occupational Safety & Health Stds. Bd.* (1999) 75 Cal.App.4th 1315, 1332 (*Pulaski*).)

A regulation is invalid and unenforceable if it conflicts with the Legislature's intent as manifested in the statute. "Government Code section 11342.2 provides: 'Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the

**2** The Board also argues that requiring a district to return unused hardship funds under regulation 1859.103 does not violate the district's equal protection rights. The trial court found it unnecessary to address this issue because it determined the regulation is inconsistent with the general savings statute, and, therefore, the regulation is unenforceable. We also find it unnecessary to address the equal protection issue because we agree the regulation is unenforceable.

5

provisions of the statute, *no regulation adopted is valid or effective unless consistent and not in conflict with the statute* and reasonably necessary to effectuate the purpose of the statute.' (Italics added.) 'Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.' (*Morris v. Williams* (1967) 67 Cal.2d 733.)" (*Pulaski, supra*, 75 Cal.App.4th at p. 1341.) Thus, regulation 1859.103 is valid and enforceable only if it does not conflict with the Greene Act.

The general savings statute (§ 17070.63, subd. (c)) appears in the "General Provisions" of the Greene Act in article 1 of Chapter 12.5 of the Education Code. Consequently, the general savings statute is generally applicable to the entire Greene Act, including the hardship funding provisions, unless there is some indication the Legislature intended some exception to that general application. If the general savings statute applies, the District is entitled to retain the savings on the project built with hardship funding and use the savings "for other high priority capital outlay purposes." (§ 17070.63, subd. (c).) Regulation 1859.103, requiring return to the state of the savings, would be invalid under such circumstances because the regulation would conflict with the general savings statute. Unless the Board can establish the Legislature intended a different result, we would be required to affirm the trial court's judgment in favor of the District.

The Board argues the Legislature did not intend for districts to retain savings from hardship funding because (A) the Legislature authorized the Board to promulgate regulations, (B) the purpose of hardship funding is to provide extraordinary additional funds, and (C) the specific statutes and regulation concerning hardship funding control over the general savings statute. We address each of these arguments in turn.

A

The Board begins by asserting its authority to promulgate regulations to implement the Greene Act. We agree the Board has authority to promulgate such

6

regulations. Section 17070.35, subdivision (a) of the Greene Act expressly delegates to the Board authority to promulgate regulations. Likewise, section 17075.15, subdivision (b), found in the hardship funding provisions of the Greene Act, requires the Board to promulgate regulations concerning hardship funding. But whether the Board has authority to promulgate regulations is not the question we must resolve. Instead, we must determine whether the regulation promulgated by the Board, specifically regulation 1859.103, conflicts with the Greene Act and, as a result, cannot be enforced. To be clear, this case is not about the Board's authority to promulgate regulations. It can, as long as those regulations do not conflict with the Greene Act. (Gov. Code, § 11342.2.)

B

The Board argues the trial court's interpretation of the Greene Act and regulation 1859.103 is inconsistent with the Legislature's intent to provide extraordinary additional funds for construction when a hardship is established. The Board cites section 17075.10, subdivision (a), which provides that "[a] school district may apply for hardship assistance in cases of extraordinary circumstances." (§ 17075.10, subd. (a).)

The Board reasons: "[T]he Legislature intended for hardship funds to be used for a specific purpose -- to assist school districts with extremely limited financial resources in completing their project. Given the limited availability of hardship funds, this purpose would be undermined if school districts could retain unneeded and unused hardship funds." Although this is an appropriate public policy argument, the statutory language and the appellate record do not support the Board's version of legislative intent.

We understand hardship funding is limited and sought-after, and that if it is not completely used by a district for a specified project, another district could benefit from those unused funds. Redirecting the unused funds could be good public policy, but that is a matter for the Legislature. Here, we are required to follow the existing language of the Greene Act. The existing language indicates the Legislature adopted a different public-policy approach, one that rewards a district for its efficiency and prudence by allowing it

7

to retain savings, thereby freeing up hardship funding that might otherwise be requested by the district in the future.  But a district is limited in how it can use the savings.  Counsel for the District agreed at oral argument that the funds must be used for "other high priority capital outlay purposes."  (§ 17070.63, subd. (c).)

The language of the general savings statute (§ 17070.63, subd. (c)) is unambiguous and speaks for itself.  Although the Board posits that a literal interpretation of the general savings statute would contradict the intent and purpose of the hardship funds program, as we have noted, the plain meaning of a statute is the best indicator of the Legislature's intent, and the Board has made no persuasive argument to ignore the plain meaning of the Greene Act with respect to the general savings statute and its application to hardship funding.

This holds true even though the hardship funding statute gives the Board authority to "adjust or defer the local financial participation" of a district, depending on the hardship established by the district.  (§ 17075.15, subd. (a).)  The Board argues this provision gives it authority to make adjustments even after the allocation has been made and the project finished.  But there is no express language in the Greene Act saying the Board can adjust hardship funding after the funds have been given to a district.  Rather, the context of the words "adjust and defer the local financial participation" establishes that such authority to "adjust" hardship funding refers to the Board's initial determinations about how to adjust the 50/50 formula in light of the district's hardship application.  This is the only reasonable interpretation of the provision given the express statutory language.  "The total funding provided under this chapter [the Greene Act, which includes hardship funding] shall constitute the state's full and final contribution to the project . . . ."  (§ 17070.63, subd. (a).)  "Any savings achieved by the district's efficient and prudent expenditure of these funds [i.e. "the total funding provided under this chapter"] shall be retained by the district . . . ."  (§ 17070.63, subd. (c).)

8

The statutory language may authorize the Board to recover unused hardship funds if there is evidence savings was not achieved by the district's efficient and prudent expenditure of funds. Counsel for the Board noted in oral argument, however, that there is no such evidence in this case.

The Board relies on *Sanchez, supra*, 179 Cal.App.4th at pages 474 and 475 for the proposition that the Board may adjust a district's participation in hardship funding after the project has been completed. This is a misreading of *Sanchez*. In that case, the court determined that funds held by the district were available for future projects, which had the effect of reducing the state's contribution of hardship funding for future projects. *Sanchez* did not approve a demand by the Board for the district to return to the state any savings from a project for which the district received hardship funding. (*Sanchez,* at p. 482.) In addition, *Sanchez* is inapposite because it did not interpret, or even mention, regulation 1859.103.

C

Finally, the Board argues the specific hardship funding statutes control over the general school facilities funding statutes. According to the Board, there was never any intent for a school district to receive a windfall when it does not need all of its allocated hardship funds. Again, however, the language of the general savings statute (§ 17070.63, subd. (c)) indicates otherwise. It expressly allows a district to retain savings without differentiating between regular and hardship funding, and nothing in the hardship funding provisions, which are part of the Greene Act, conflicts with application of the general savings statute. Certainly, when two statutes are in conflict, the specific controls over the general (Code Civ. Proc., § 1859 [particular intent controls over general intent]), but when there is no conflict, there is no need to resort to this rule. Because there is no conflict in the general savings statute and the hardship funding statutes, both must be given full effect. (*In re Application of Goddard* (1937) 24 Cal.App.2d 132, 138.)

9

We conclude the Greene Act allows a district to retain savings of hardship funding "achieved by the district's efficient and prudent expenditure of these funds . . . ." (§ 17070.63, subd. (c).) To the extent regulation 1859.103 requires a district to return hardship funds to the state, it conflicts with the Greene Act, specifically with section 17070.63, subdivision (c), and is unenforceable.

## DISPOSITION

The judgment is affirmed. The District is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)


                                                                 /S/
                                                              MAURO, J.

We concur:


    /S/
RAYE, P. J.


    /S/
HULL, J.